UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CONTEC CORPORATION,

                              Plaintiff,

        -against-

REMOTE SOLUTION CO., LTD.

                              Defendant.

03-CV-00910 (DNH-DRH)


U.S. DISTRICT COURT
**N.D. OF N.Y.**
**FILED**

JUL 3 1 2003

LAWRENCE K. BAERMAN, CLERK
ALBANY


### MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION OF DEFENDANT REMOTE SOLUTION CO., LTD. TO STAY ARBITRATION PROCEEDINGS


**NOLAN & HELLER, LLP**
**Attorneys for Defendant**
**39 North Pearl Street**
**Albany, New York 12207**
**Telephone: (518) 449-3300**
**Telecopier: (518) 432-3123**

# TABLE OF CONTENTS

**Page**

THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT I
TO THE EXTENT THE INDEMNIFICATION PROVISION PURPORTS TO
PROTECT CONTEC FROM INFRINGEMENT CLAIMS BASED ON
SPECIFICATIONS SUPPLIED BY CONTEC, THE PROVISION IS VOID
AS IT VIOLATES PUBLIC POLICY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    Indemnifying Against Contec's Patent Infringement Violates Remote
           Solution's Rights Under the Warranty of Non-Infringement. . . . . . . . . . . . . 7

    B.    The Patent Infringement Indemnity Provision, as Interpreted by
           Contec, Violates Public Policy as it Indemnifies Contec from
           its Own Wrongdoing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

POINT II
CONTEC'S CLAIM FOR INDEMNITY IS NOT ARBITRABLE. . . . . . . . . . . . . . . 10

POINT III
AS CONTEC IS IN MATERIAL BREACH OF THE AGREEMENT, IT MAY
NOT INVOKE ITS BENEFITS, INCLUDING THE ARBITRATION
PROVISION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

POINT IV
IN THE ALTERNATIVE, THIS COURT SHOULD STAY THE
ARBITRATION PENDING RESOLUTION OF PATENT LITIGATION
IN DELAWARE WHICH IS ADDRESSING ISSUES THAT MAY BE
DISPOSITIVE OF THE ARBITRATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

POINT V
REMOTE SOLUTION IS ENTITLED TO AN INJUNCTION
STAYING ARBITRATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Defendant Remote Solution Co., Ltd. ("Remote Solution") hereby moves the Court, pursuant to N.Y. CPLR §7503(b), 9 U.S.C. §§3-4 and the Court's equitable powers, for an Order staying arbitration proceedings between Remote Solution and plaintiff Contec Corporation ("Contec"), preliminarily and permanently, and in support thereof states as follows:

## THE PARTIES

Remote Solution (formerly known as Hango Electronics Co., Ltd.), is a business entity organized and existing under the laws of the Republic of Korea. Remote Solution builds remote control units for the OEM market.[1] (Park Decl. ¶2[2]).

Contec is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Schenectady, New York. (Compl. ¶1). Contec is in the business of, among other things, supplying remote control units to operators of cable television systems and other customers.

## STATEMENT OF FACTS

On a motion to stay arbitration, the Court accepts the moving party's version of the facts. **Northern Tankers Cyprus Ltd. v. Lexmar Corp.**, 781 F.Supp. 289, 291 n.2 (S.D.N.Y. 1992).

Remote Solution and Contec entered into a Manufacturing and Purchase Agreement dated February 16, 1999 (the "Agreement") (Park Decl. Ex. A). David K. Ahn of Hango Electronics, Inc.,

---

[1]

"OEM" is short hand for "original equipment manufacturers," and refers to companies that purchase computers or other complex components from manufacturers, add other hardware or software, and sell the systems, often for specific applications. The American Heritage Dictionary of the English Language (4th ed.2000).

[2]

The Declaration of Suk Kyu Park, filed herewith, is cited to herein as "Park Decl. ___." The Declaration of David K. Ahn, filed herewith, is cited to herein as "Ahn Decl. ___."

1

a California corporation, executed the Agreement on behalf of Remote Solution.

Pursuant to the Agreement, Remote Solution was to build remote control units for Contec pursuant to specifications supplied by Contec. (Park Decl. ¶5 & Ex. A at 1). Those specifications included conceptual designs, case designs, software code and semiconductor chips. (**Id.** at Ex. A at 3). The agreement was drafted by Contec, which unilaterally set the terms other than price. (**Id.** ¶4).

Contec instructed Remote Solution to build "universal" remote controls, which are remote control devices that can be used to control different types of appliances made by different manufacturers. **Philips Electronics North America Corp. v. Universal Electronics, Inc.**, 930 F.Supp. 986, 987-88 (D. Del. 1996). Contec provided all the specifications for having the remote controls operate as "universal remote controls." All universal remote controls units ("RCUs") built by Remote Solution pursuant to the Agreement were based on specifications and software provided by Contec. (Park Decl. ¶5).

Pursuant to the terms of the Agreement, Contec's specifications, including the software code and semiconductor, were the property of Contec, and Remote Solution was not permitted to make any other use of such information without Contec's prior written consent. Remote Solution never used the proprietary information for any purpose other than to build the universal RCUs that Contec request. (Park Decl. ¶6 & Ex. A at 3).

The Agreement includes some express warranties given by Remote Solution. (**Id.** Ex. A at 4-5). Contec does not give any express warranties, *nor does it disclaim any implied warranties.*

Section 3(c) of the Agreement provides, in pertinent part, that:

> Seller [Remote Solution] shall defend any suit or proceeding

> brought against Purchaser [Contec] to the extent that such suit or proceeding is based on a claim that the Products constitute an infringement of any valid United States or foreign patent, copyright, trade secret or other intellectual property right and Seller shall pay all damages and costs awarded by final judgment against Purchaser.

(**Id.** Ex. A at 3).  The term "Products" is defined in the Agreement as "RCU's designed and/or manufactured and sold by [Remote Solution] to [Contec] pursuant to this Agreement...."

Section 13(a) of the Agreement provides, in pertinent part, that

> Each party shall indemnify and hold harmless the other party, its shareholders, directors, officers, employees, agents, designees and assignees, or any of them, from and against all losses, damages, liabilities, expenses, costs, claims, suits, demands, actions, causes of actions, proceedings, judgments, assessments, deficiencies and charges (collectively, "Damages") caused by, relating to, or arising from a default in the performance by such party in accordance with this Agreement of its obligations hereunder, or a breach of its obligations hereunder, or a breach of its warranties or representations as made herein.

(**Id**. Ex. A at 8).

Finally, Section 19 of the Agreement provides, in pertinent part, that:

> In the event of any controversy arising with respect to this Agreement, both parties shall use best efforts to resolve the controversy.  In the event the parties are unable to arrive at a resolution, such controversy shall be determined by arbitration held in the City of Albany, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA") or any organization that is the successor thereto using arbitrators knowledgeable in the CATV telecommunications industry and who will follow substantive rules of law.

(**Id**. Ex. A at 9-10).

Remote Solution began shipping RCUs to Contec on September 28, 2000.  The RCUs were shipped F.O.B. Korea, meaning title to the goods passed to Contec in Korea.  (Park Decl. ¶7).

According to Contec's arbitration demand (attached to Contec's Complaint), Contec was sued by Universal Electronics, Inc. for patent infringement in connection with the RCUs (among other things) on November 15, 2000.[3]   Contec settled that lawsuit.  During the course of that litigation, Contec continued to receive RCUs from Remote Solution, and never instructed Remote Solution to stop making the RCUs pending resolution of the litigation.  (**Id.** ¶8).

On February 12, 2002, Philips Electronics North America Corporation and U.S. Philips Corporation (collectively, "Philips") filed suit against Contec in the United States District Court for the District of Delaware, Civil Action No. 02-123 KAJ, also claiming that technology making the RCUs "universal" violated Philips' patents.[4]  Although the original complaint named only Contec as a defendant, Philips subsequently amended its Complaint to add as defendants Compo Micro Tech, Inc., Seoby Electronics Co., Ltd., Remote Solution and Hango Remote Solution, Inc. ("Philips Amended Complaint").

On January 24, 2003, Remote Solution filed a motion to dismiss for lack of personal jurisdiction. (Park Decl. Ex. C at 17).  Discovery on that motion is currently underway and near to being completed.  Philips has advised Remote Solution that, even if Remote Solution is successful on its motion, it will not end the matter, and Philips will merely file a new suit against Remote Solution in another jurisdiction.  (Park Decl. ¶9).

Contec has entered into a settlement agreement with Philips.  The agreement, however, has

---

[3]

Usually such lawsuits are preceded by demand letters.  Thus, it is probable that Contec was put on notice of the claim some time prior to November 15, 2000.

[4]

To round out the circle, Philips sued Universal Electronics, Inc., claiming patent infringement relating to universal remote controls.  Philips lost that suit.  **Philips Electronics North America Corporation v. Universal Electronics, Inc.**, 930 F.Supp. 986 (D. Del. 1996)

not yet been judicially approved, as Contec filed the settlement agreement under seal, and the Honorable Kent A. Jordan, the judge assigned to the case, declined to enter an order under seal.

During the pendency of the litigation with Philips, as during the pendency of the litigation with Universal Electronics, Inc., Contec did not ask Remote Solution to stop making and shipping the RCUs.  To the contrary, in an e-mail to David K. Ahn dated March 27, 2002 (before Remote Solution was dragged into the Delaware lawsuit), Harry Mickey, a Vice President of Contec, stated that "[i]t is Contec's opinion that we do not infringe...."  (Ahn Decl. Ex. A).

Production continued under the Agreement, and to date Remote Solution has shipped over 1.2 million RCUs to Contec pursuant to the Agreement. (Park Decl. ¶8).

Contec demanded that Remote Solution pay its expenses, including legal bills, royalty payments and settlement amounts.  Remote Solution advised Contec that Remote Solution did not believe it was obligated under the Agreement, as the alleged infringement claims arose from specifications provided by Contec, and not from any design originating with Remote Solution.

By e-mail dated April 1, 2003, Contec advised Mr. Ahn  that it did not have the money to pay amounts owed to Remote Solution under the Agreement.  When Remote Solution pushed the issue, Contec shifted it position and said that it was withholding payment pending resolution of Contec's indemnification claim.  (Ahn Decl. ¶B).  On June 13, 2003, Remote Solution filed suit against Contec in Korea to collect the unpaid amounts.  (Park Decl. ¶10 & Ex. B).

On July 11, 2003, Contec made a written demand for arbitration proceedings.  On July 21, Contec filed the present action.

## ARGUMENT

I.   **TO THE EXTENT THE INDEMNIFICATION PROVISION PURPORTS TO PROTECT CONTEC FROM INFRINGEMENT CLAIMS BASED ON SPECIFICATIONS SUPPLIED BY CONTEC, THE PROVISION IS VOID AS IT VIOLATES PUBLIC POLICY.**

This Court has the authority to stay or enjoin arbitration proceedings in appropriate circumstances. **Satcom Intern. Group PLC v. Orbcomm Intern. Partners, L.P.**, 49 F.Supp.2d 331, 341 (S.D.N.Y. 1999); **Westmoreland Capital Corp. v. Findlay**, 916 F.Supp. 242, 247 (W.D.N.Y.), *aff'd*, 100 F.3d 263 (2nd Cir. 1996); **Tepper Realty Co. v. Mosaic Tile Co.**, 259 F.Supp. 688, 691-92 (S.D.N.Y. 1966).

Where arbitration will violate public policy, such provisions are deemed void and unenforceable. **Harris v. Iannaccone**, 107 A.D.2d 429, 431, 487 N.Y.S.2d 562, 563 (1st Dept. 1985), *aff'd*, 66 N.Y.2d 728, 487 N.E.2d 908 (1985).  It is for the Court to determine, in the first instance, whether enforcement of an agreement to arbitrate a particular matter would so contravene public policy as to be impermissible. **Matter of Bd. of Educ., Potsdam Cent. School Dist. v. Kmack**, 216 A.D.2d 718, 719-20, 627 N.Y.S.2d 832, 834 (3d Dept 1995); **Bd. of Educ. of City of Buffalo v. Buffalo Council of Sup'rs and Administrators**, 52 A.D.2d 220, 225, 383 N.Y.S.2d 732, 735 (4th Dept 1976).  As the Agreement provides that it is governed by New York law (Park Decl. Ex. A at 11), it is appropriate for the Court to look to New York state law in determining whether a contractual provision violates public policy. *See* **Walters v. Fullwood**, 675 F.Supp. 155, 162 (S.D.N.Y. 1987).

In this case, there are two independent grounds for finding that a provision requiring indemnification for a party's own patent infringement violates public policy: (i) the indemnity

provision contradicts Remote Solutions rights under a New York statute, and (ii) Contec improperly

seeks indemnification against its own wrongdoing.

A.   **INDEMNIFYING AGAINST CONTEC'S PATENT INFRINGEMENT VIOLATES REMOTE SOLUTION'S RIGHTS UNDER THE WARRANTY OF NON-INFRINGEMENT.**

Section 2-312(c) of the Uniform Commercial Code (N.Y. U.C.C. §2-312[c] [McKinney])

provides that:

> Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

In other words, one who regularly sells a product warrants that the product is non-infringing,

unless the parties agree to waive that warranty. However, if the purchaser provides the specifications

for the product being sold, then the purchaser is deemed as a matter of law to have agreed to

indemnify the seller against any claim arising out of compliance with the specifications. 67

Am.Jur.2d Sales §840 at 238 (2nd ed. 1985).

That is what occurred here. There is no legitimate dispute that Contec provided all

specifications, including the specifications pertaining to the operation and functioning of the

universal remote controls. (Park Decl. ¶5).[5] Further, there is no legitimate dispute that Remote

Solution qualifies as a "merchant regularly dealing in goods of the kind," *i.e.*, remote control units.

---

[5]

To the extent that Contec decides to challenge this, the parties will need to enter into a confidentiality agreement so that Remote Solution can put in the documentary evidence clearly proving this without the risk of Contec accusing Remote Solution of betraying any confidentiality agreement or revealing its proprietary information.

It is also clear that there is no disclaimer of the warranty of non-infringement.  To the contrary, Contec emphasizes in the Agreement that the specifications are deemed to be Contec's own proprietary information.  (Park Decl. Ex. A at 3).  The definition of "proprietary" includes "owned by a private individual or corporation under a trademark or patent."  **The American Heritage Dictionary of the English Language** at 1050 (1970).  *Accord* **Random House Dictionary of the English Language** at 1062 (College ed. 1969) ("manufactured and sold only by the owner of the patent, trademark, etc.").[6]

Contec had made a clear and express assertion of ownership of the specifications.  It reinforced its claim of title and non-infringement in the March 27, 2002 e-mail to Mr. Ahn.  (Ahn Decl. Ex. A).

Moreover, there is nothing satisfying the requirement of a clear and unambiguous disclaimer of the warranty of non-infringement.  *See* **Royal Business Machines Corp. v. Lorraine Corp.,** 633 F.2d 34, 46 (7th Cir. 1980) (disclaimer of UCC warranties must be clear, conspicuous and conscionable); **NMP Corp. v. Parametric Technology Corp.,** 958 F.Supp. 1536, 1542 (N.D. Okla. 1997) (disclaimer must be "clear, unambiguous and conspicuous"); **Boeing Airplane Co. v. O'Malley,** 329 F.2d 585, 593 (8th Cir. 1964) ("[a]n implied warranty under the statute must be disclaimed by the most precise terms; in other words, so clear, definite and specific as to leave no doubt as to the intent of the contracting parties").

Moreover, to the extent that Contec argues that it did not claim ownership of the patent rights, or somehow disclaimed them, such a position would indicate that Contec engaged in fraud

---

[6]

As Contec drafted the Agreement, any ambiguities must be construed against it. **Paine Webber Inc. v. Bybyk**, 81 F.3d 1193, 1199 (2nd Cir. 1996).

in the inducement of the Agreement, by stating that it had proprietary rights in the specification when it knew or has reason to know that such was not the case.  Such fraud negates the indemnity provision, *see* **Standard Sur. and Cas. Co. of N.Y. v. Olson**, 150 F.2d 385, 387 (8th Cir. 1945), and justifies a preliminary injunction pending trial of the issue of fraudulent inducement.  ***See*** **Robert Lawrence Co. v. Devonshire Fabrics, Inc.**, 271 F.2d 402, 411 (2nd Cir. 1959), ***cert. dismissed***, 364 U.S. 801 (1960).

The proposed indemnification agreement, as applied in this case, violates U.C.C. Section 2-312(c), and so violates public policy.  It is therefore void.  *See* **Maryland Cas. Co. v. Continental Cas. Co.**, 332 F.3d 145, 156 (2nd Cir. 2003) (public policy requires that contracts comply with statutes). As Contec has no right to indemnification by Remote Solution for damages and expenses resulting from specifications provided by Contec, it has no right  under the Agreement to drag Remote Solution into commercial arbitration against its will.

**B.     THE PATENT INFRINGEMENT INDEMNITY PROVISION, AS INTERPRETED BY CONTEC, VIOLATES PUBLIC POLICY AS IT INDEMNIFIES CONTEC FROM ITS OWN WRONGDOING.**

It is well-settled New York law that a party may not contract for indemnification for that party's own intentional acts. **Lang v. Warner**, 121 A.D. 2d 514, 504 N.Y.S.2d 18, 19 (2nd Dept. 1986), ***app. denied mem.***, 69 N.Y. 2d 601, 503 N.E.2d 695 (1986); **Delaney v. Spiegel Associates**, 225 A.D. 2d 1102, 1103-4, 639 N.Y.S.2d 637, 639 (4th Dept. 1996).  ***Accord*** **Globus v. Law Research Services, Inc.**, 418 F.2d 1276, 1288 (2nd Cir. 1969) (a party cannot insure himself against reckless or wilful conduct).

The Philips Amended Complaint accuses Contec of "willful patent infringement." (Philips Am. Compl. ¶¶32, 42).  Willfulness, in patent law, includes an element of intent.  **Pall Corp. v.**

9

**Micron Separations, Inc.**, 66 F.3d 1211, 1221 (Fed. Cir. 1995); **Stickle v. Heublein, Inc.**, 716 F.2d 1550, 1565 (Fed. Cir. 1983). Thus, to the extent that Contec may have committed "willful" infringement, it may not invoke the indemnification clause, procedurally or substantively.

Irrespective of how the claim is designated, if there be infringement arising from the RCUs that Remote Solution assembled for Contec, it is sufficient that it was the result of Contec's intentionally providing the specifications to Remote Solution. Where the alleged harm is the inherent result of an intentional act, intent to injure will be inferred as a matter of law from the intentional character of the act. If the act is intentional, so is the harm, and the Court need not inquire into Contec's subjective intent to cause the injury. **Dodge v. Legion Ins. Co.**, 102 F.Supp.2d 144, 151 (S.D.N.Y. 2000).

Contec intentionally provided the specifications to Remote Solution. Contec intended to have Remote Solution build the RCUs according to those specifications. If the RCUs infringed a patent, such injury was the inherent result of the RCUs being built according to those specifications.

## II.   CONTEC'S CLAIM FOR INDEMNITY IS NOT ARBITRABLE.

The question of whether a particular claim is subject to arbitration is a matter for the Court. **Specht v. Netscape Communications Corp.**, 306 F.3d 17, 26-27 (2nd Cir. 2002); **Application of Klineman**, 160 Misc. 2d 774, 777, 611 N.Y.S.2d 729, 731-32 ( Sup. Ct. NY County 1993).

As noted previously, Section 3(c) of the Agreement purports to indemnify Contec against patent infringement actions based on claims that the "Products constitute an infringement of any valid United States...patent...." However, the Agreement defines "products" as RCUs "designed and/or manufactured" by Remote Solution.

The lawsuits by Universal Electronics, Inc. and Philips do not allege that the RCUs

10

themselves  violate any patents.  Rather, the lawsuits allege that designs, transmitters and programming inside the RCUs infringe certain patents.  Indeed, even in the Agreement, Contec distinguishes between RCU physical designs (on the one hand) and the technological makeup, such as software code and semiconductor chips (on the other hand).  It is this technology that implements the "universal" application of the remote control.  As such, the software and design provided by Contec is not contemplated as being within the scope of this indemnity provision.

Under the Agreement, indemnification is limited to RCUs that Remote Solution either "designs" or "manufactures."  There clearly is no dispute that Contec, and not Remote Solution, designed the RCUs, providing all of the specifications.  Moreover, the process of assembling Contec's software and design into the RCUs does not qualify as being "manufactured," as the process has been provided by Contec.

It defies logic to suggest that the parties intended that Remote Solution indemnify Contec for infringement arising from specifications provided by Contec and inserted into goods as to which Contec took title in Korea.  There can be no justification for that interpretation to be part of the basis of the parties' bargain.

## III.   AS CONTEC IS IN MATERIAL BREACH OF THE AGREEMENT, IT MAY NOT INVOKE ITS BENEFITS, INCLUDING THE ARBITRATION PROVISION.

It is black-letter law that a party who materially breaches a contract may not thereafter take advantage of terms of the contract that benefit him.  **Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.**, 143 F.3d 800, 806 (3rd Cir. 1998); **Neimott v. Kohl's**, 171 Ill. App. 3d 54, 70, 524 N.E.2d 1085, 1095 (Ill. App. 1988), **app. denied mem.**, 122 Ill. 2d 578, 530 N.E.2d 250 (1988); **Baker Marine Corp. v. Weatherly Engineering Co.**, 710 S.W.2d 690, 696 (Tex. App. 1986). **Cf.**

**Hartzell v. Burdick**, 91 Misc. 2d 758, 760, 398 N.Y.S.2d 649, 650 (City Ct. Albany County 1977) (one who seeks to recover under a contract must show that he himself is free from fault in respect of performance).

As set forth above, Contec has materially breached the Agreement by failing to pay $620,038 to Remote Solution for product shipped to Contec in 2003.  Contec originally admitted that it did not have the money, but later created the pretext that it was withholding the money pending resolution of the indemnity issue. (Park Decl. ¶10; Ahn Decl. Ex. B).

Thus, until Contec has fulfilled its obligations under the Agreement, it may not seek to take advantage of the arbitration provision.

## IV. IN THE ALTERNATIVE, THIS COURT SHOULD STAY THE ARBITRATION PENDING RESOLUTION OF PATENT LITIGATION IN DELAWARE WHICH IS ADDRESSING ISSUES THAT MAY BE DISPOSITIVE OF THE ARBITRATION.

If this Court determines that Contec's claim is arbitrable and that Contec's breach of the Agreement is not an impediment, then Remote Solution respectfully requests that the Court stay the arbitration pending resolution of the Delaware patent infringement litigation, as issues being addressed in that case may be dispositive in the arbitration, and a stay would avoid unnecessary additional expense and the risk of inconsistent decisions.

As noted above, Contec settled with Philips. Contec did so without consulting Remote Solution.  Consequently, at any arbitration, the burden will be on Contec to demonstrate to the arbitrator that it  was legally liable to Philips – in other words, that there was no defense – and that the settlement amount was reasonable. **Abrams v. Milwaukee Elec. Tool Corp.**, 171 A.D. 2d 930, 566 N.Y.S.2d 798, 799 (3rd Dept. 1991); **Trojcak v. Wynn**, 45 A.D. 2d 770, 357 N.Y.S.2d 32, 34 (2nd Dept. 1974).

Although it is a simple matter for Contec to claim that it did not have a defense[7], there are numerous defenses that are being raised in the Delaware action, including (i) the invalidity of the patents, (ii) the patents were not infringed, (iii) the claims are barred under the equitable doctrine of laches and estoppel, and (iv) inequitable conduct before the U.S. Patent and Trademark Office. (Park Decl. Ex. D).  If any of these defenses are established, it will constitute a complete defense to Contec's claim.[8]

To require Remote Solution to litigate these issues in arbitration, while they are being litigated simultaneously in Delaware, would subject Remote Solution to undue and unnecessary expense (contrary to one of the policies behind arbitration), and runs the risk of an arbitration decision in New York contrary to a decision of a federal judge in Delaware on the exact same issue.[9]

Given that Contec settled unilaterally, and is itself in breach of the Agreement, the equities support deferring the arbitration pending resolution of the Delaware litigation.

## V.     REMOTE SOLUTION IS ENTITLED TO AN INJUNCTION STAYING ARBITRATION.

"If a court determines that a valid arbitration agreement does not exist or that the matter at issue clearly falls outside of the substantive scope of the agreement, it is obliged to enjoin

---

[7]

If Contec claims there was no defense, this is an admission that it engaged in willful infringement.

[8]

Further, Contec will need to justify settling the patent infringement claim of Universal Electronics, Inc. when that company successfully defended Philips' patent infringement claim.

[9]

Pursuant to the Second Amended Scheduling Order entered on January 13, 2003, any summary judgment motions on these issues must be filed by October 6, 2003, and trial is scheduled to being on February 23, 2004, and may last for up to two weeks.  (Park Decl. Ex.E).

arbitration." **PaineWebber, Inc. v. Hartmann**, 921 F.2d 507, 511 (3rd Cir. 1990).

To compel Remote Solution to arbitrate where there is no legal obligation to do so constitutes irreparable injury. **Mount Ararat Cemetery - Cemetery Workers and Greens Attendants Union, Local 365 S.E.I.U.,** AFL-CIO, 975 F.Supp. 445, 446-47 (E.D.N.Y. 1997); **Dean Witter Reynolds, Inc. v. Goyette**, 25 F.Supp.2d 1344, 1346 (M.D. Fla. 1996); **Prudential Securities, Inc. v. Mills**, 944 F.Supp. 625, 631 (W.D. Tenn. 1996).

Absent a preliminary injunction, Remote Solution is faced with two choices, neither of which is remediable.  On the one hand, it can participate in arbitration, which (i) would subject Remote Solution to expense for which there is no assured mechanism or legal basis for recovery later, and (ii) would compel Remote Solution to appear in a jurisdiction to which it might not otherwise be constitutionally subject.

On the other hand, if Remote Solution were to ignore the arbitration, it would run the risk of a ruling against it on the merits which, if Remote Solution were ultimately unsuccessful on this application, would be binding.

14

## CONCLUSION

Remote Solution has established that its claim to stay arbitration is meritorious and that it will suffer irreparable harm if arbitration is permitted to proceed.

WHEREFORE, for the foregoing reasons, defendant Remote Solution Co., Ltd. respectfully requests that this Court stay arbitration proceedings, preliminarily and permanently.

Dated: Albany, New York
　　　July 31, 2003

Respectfully submitted,

NOLAN & HELLER, LLP

By:

Justin A. Heller, Esq. (Bar Roll No. 103632)
39 North Pearl Street, 3rd Floor
Albany, New York 12207
Telephone: (518) 449-3000
Telecopier: (518) 432-3123
Attorneys for Defendant, Remote Solution
Co., Ltd.

Of counsel:

David L. Finger (DE Bar ID #2556)
DAVID L. FINGER, P.A.
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, Delaware 19801-1155
Telephone: (302) 884-6766

16585-1

15